**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| MARK FITZHENRY, *individually and on behalf of a class of all persons and entities similarly situated*, ) ) ) ) ) Plaintiff, ) ) v. ) ) ONE ON ONE MARKETING LLC *d/b/a* ) DEGREE SEARCH; VIRGINIA ) COLLEGE, LLC; and EDUCATION ) CORPORATION OF AMERICA, ) ) Defendants. ) ) | No. 2:14-cv-4782-DCN **ORDER** |

This matter is before the court on a motion to dismiss for lack of personal jurisdiction filed by defendant Education Corporation of America ("ECA"). For the reasons set forth below, the court grants ECA's motion.

## I.  BACKGROUND

Plaintiff Mark Fitzhenry ("Fitzhenry") alleges that on September 19, 2014, he received a telemarketing call on his cell phone. Compl. ¶ B.2. The caller identified herself as Shauntel Smith of Degree Search and provided Fitzhenry with the company's website. Id. ¶ B.4. Smith informed Fitzhenry that the call was marketing Virginia College's education programs and that the call was made using an automatic dialing system. Id. ¶¶ B.6–7. Smith then transferred the call to Brian McFarlane at Virginia College, who provided Fitzhenry with Virginia College's website and informed him that Degree Search is an outside call center working on behalf of Virginia College. Id. ¶¶ B.8–10. The same day, Fitzhenry received another autodialed call on his cell phone

1

from Nate Dennis of Virginia College.  Id. ¶ B.11.  Fitzhenry alleges that he did not provide his cell phone number nor provide express written consent to receive calls from automatic telephone dialing systems.  Id. ¶¶ B.18–19.  Virginia College is a wholly owned subsidiary of Education of Alabama, which is a wholly owned subsidiary of ECA.  Id. ¶ C.6.

On December 18, 2014, Fitzhenry filed this action alleging violations of the Telephone Consumer Protection Act ("TCPA").  On February 6, 2015, ECA filed the instant motion to dismiss.  Fitzhenry responded on March 16, 2015, and ECA filed a reply on April 9, 2015.  This matter has been fully briefed and is ripe for the court's review.

## II.  STANDARD

When personal jurisdiction is challenged by the defendant, the plaintiff has the burden of showing that jurisdiction exists.  See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997).  When the court decides a personal jurisdiction challenge without an evidentiary hearing, plaintiffs must prove a prima facie case of personal jurisdiction.  See Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993).  To determine whether a plaintiff has satisfied this burden, the court may consider both the defendant's and the plaintiff's "pleadings, affidavits, and other supporting documents presented to the court" and must construe them "in the light most favorable to plaintiff, drawing all inferences and resolving all factual disputes in its favor," and "assuming [plaintiff's] credibility."  Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320, 2000 WL 691100, at *1 (4th Cir. 2000) (table); Mylan Labs, 2 F.3d at 62; Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).  The court, however, need not "credit conclusory allegations or draw

farfetched inferences." Massellli, 2000 WL 691100, at *1 (quoting Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994)).

### III. DISCUSSION

ECA argues that Fitzhenry's claims against it should be dismissed because the court lacks personal jurisdiction over ECA. Def.'s Mot. 1.

"[T]o validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and second, the exercise of personal jurisdiction must not "overstep the bounds" of the Fourteenth Amendment's Due Process Clause. Anita's N.M. Style Mexican Food, Inc. v. Anita's Mexican Foods Corp., 201 F.3d 314, 317 (4th Cir. 2000). South Carolina's long-arm statute has been construed to extend to the outer limits allowed by the Due Process Clause. Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002). "Because South Carolina treats its long-arm statute as coextensive with the due process clause, the sole question becomes whether the exercise of personal jurisdiction would violate due process." Cockrell v. Hillerich & Bradsby Co., 611 S.E.2d 505, 508 (S.C. 2005).

The scope of the court's inquiry is therefore whether a defendant has "certain minimum contacts" with the forum, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted). A defendant has minimum contacts with a state when "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen

Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Under this standard, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The analytical framework for determining whether personal jurisdiction exists differs according to which type of personal jurisdiction—general or specific—is alleged. See generally ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623–24 (4th Cir. 1997). When a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over a defendant that purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73 (1985). When the cause of action does not arise out of a defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a "continuous and systematic" nature.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416 (1984).

Fitzhenry appears to concede that ECA does not have "continuous and systematic" ties to South Carolina and instead bases his argument entirely on specific jurisdiction.  See Pl.'s Resp. 10–12.  Therefore, the only issue before the court is whether ECA had sufficient minimum contacts to subject it to specific jurisdiction in South Carolina.

The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific jurisdiction:  (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus

4

invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Nolan, 259 F.3d at 215–16 (citing Helicopteros, 466 U.S. at 414–16; Burger King, 471 U.S. at 472, 476–77).

The first inquiry concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 131 S. Ct. 2780, 2788 (2011) (quoting Hanson, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral activity of another person or third party. Burger King, 471 U.S. at 475. Even a single contact with the forum state can constitute purposeful availment sufficient to satisfy due process requirements. Id. at 475 n.18 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). The Fourth Circuit has held that a "single transaction is a sufficient contact to satisfy [due process] if it gives rise to the liability asserted in the suit." Hardy v. Pioneer Parachute Co., 531 F.2d 193, 195 (4th Cir. 1976).

ECA argues that Fitzhenry cannot establish purposeful availment because ECA has not engaged in any business activities purposefully directed towards South Carolina. ECA's Mot. 5. ECA attaches the declaration of Brandon Fee ("Fee"), director of Licensing for ECA, to its motion. Def.'s Mot. Ex. A. Fee asserts that: (1) ECA is a Delaware corporation with its principal place of business in Alabama; (2) ECA is the ultimate parent corporation of Virginia College; (3) ECA has neither requested, initiated,

5

nor facilitated calls to any residents of South Carolina in connection with the marketing of Virginia College's educational programs; (4) ECA has never entered into a contract with Degree Search for the purpose of making telemarketing calls to residents of South Carolina; (5) ECA is not licensed to do business in South Carolina and has not conducted any business transactions with any individual or business entity within South Carolina; (6) ECA has not attempted to procure or solicit business from any individual or business entity within South Carolina; and (7) ECA does not maintain any corporate offices or own property in South Carolina. Id.

Fitzhenry, on the other hand, argues that ECA has availed itself of the privilege of conducting business in South Carolina because of its close relationship with Virginia College. It points to various indications of this close relationship. First, it notes that ECA's website shows that it "open[ed] a branch campus of Virginia College is Greenville, South Carolina" in 2008. Pl.'s Resp. Ex. 4. Additionally, job postings on ECA's website seek employees to work at its South Carolina locations. Id. Ex. 5. Finally, ECA's website indicates that its senior vice president for marketing "is responsible for the marketing and branding efforts for all of ECA's brands, including . . . Virginia College." Id. Ex. 7. Fitzhenry concludes that "ECA's role in targeting South Carolina as a site for a Virginia College branch and then directing, overseeing, and implementing the marketing campaign that included the unsolicited autodialed calls . . . is sufficient to show that ECA conducted business in South Carolina." Pl.'s Resp. 10–11.

However, while Fitzhenry discusses at length Virginia College's contacts with South Carolina and Virginia College's relationship with ECA, he does not discuss ECA's

contacts with South Carolina.  It is undisputed that ECA did not make either call to Fitzhenry.  Rather, Fitzhenry asks the court to impute Virginia College's actions to ECA.

"[T]he mere fact that [a corporation's] subsidiaries do business in South Carolina does not confer personal jurisdiction over [the corporation]."  Gray v. Riso Kagaku Corp., 82 F.3d 410 (4th Cir. 1996); see also Mylan Labs., 2 F.3d at 63 (finding that a district court did not err in holding that the parent-subsidiary relationship between two companies was insufficient to justify the exercise of personal jurisdiction over the parent company in a forum with which it did not have sufficient minimum contacts); Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980); 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1069.4 (3d ed. 2014) ("When a subsidiary of a foreign corporation is carrying on business in a particular jurisdiction, the parent company is not automatically subject to jurisdiction in that state because of the presumption of corporate separateness.  Thus, if the subsidiary's presence in the state is primarily for the purpose of carrying on its own business and the subsidiary has preserved some semblance of independence from the parent and is not acting as merely one of its departments, personal jurisdiction over the parent corporation may not be acquired simply on the basis of the local activities of the subsidiary company.").

In order for the minimum contacts of a subsidiary to be imputed to a parent, a plaintiff must show that the subsidiary's corporate veil should be pierced.  See Tuttle Dozer Works, Inc. v. Gyro-Trac (USA), Inc., 463 F. Supp. 2d 544, 547 (D.S.C. 2006) ("[P]ersonal jurisdiction over a corporate entity can be had based on the contacts of its subsidiaries only if the plaintiff is able to 'pierce the corporate veil.'").  "Piercing the corporate veil is only reluctantly allowed."  Salley v. Heartland-Charleston of Hanahan,

SC, LLC, No. 2:10-cv-00791, 2010 WL 5136211, at *4 (D.S.C. Dec. 10, 2010) (citing Baker v. Equitable Leasing Corp., 271 S.E.2d 596, 600 (S.C. 1980)).  "In order to establish personal jurisdiction under the veil piercing doctrine, plaintiffs must establish a prima facie case that:  (1) the corporation and its stockholder failed to observe corporate formalities and (2) recognizing the corporate veil would create 'fundamental unfairness.'"  Id. (quoting Multimedia Pub. of S.C., Inc. v. Mullins, 431 S.E.2d 569, 571 (S.C. 1993)).  Factors to be considered under the first prong include: (1) whether the corporation was grossly undercapitalized for the purposes of the corporate undertaking; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation; (5) siphoning of funds of the corporation by the dominate shareholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the corporation serving as a façade for the operations of the dominant shareholder.  Id. (citing Hunting v. Elders, 579 S.E.2d 803, 807 (S.C. Ct. App. 2004)); see also Jones ex rel. Jones v. Enter. Leasing Co., 678 S.E.2d 819, 824 (S.C. Ct. App. 2009) (discussing methods for achieving alter ego status).

      The Fourth Circuit's decision in Gray is instructive.  In Gray, the plaintiff entered into a contract with a subsidiary corporation. 82 F.3d at *1.  The plaintiff sued the subsidiary and its parent company in South Carolina district court and the parent corporation moved to dismiss for lack of personal jurisdiction.  Id. at *2.  The Fourth Circuit first reiterated that "the mere fact that [the parent corporation's] subsidiaries do business in South Carolina does not confer personal jurisdiction over [the parent corporation]."  Id. at *3.  The court went on to note that the marketing of the parent's products in South Carolina did not provide a basis for exercising personal jurisdiction.

Id. The plaintiff argued that the district court should have exercised jurisdiction over the parent company by piercing the subsidiary's corporate veil. Id. In support, the plaintiff argued that (1) the parent funded the subsidiary and gave it cash infusions; (2) the subsidiary did not regularly hold formal board meetings; (3) a majority of the subsidiary's board members were associated with the parent; (4) the subsidiary sought approval from the parent before hiring officials; and (5) the parent indicated that its approval was required for resolving complaints with the plaintiff. Id. The Fourth Circuit determined that "[a]lthough these facts demonstrate that [the subsidiary] failed to observe some corporate formalities, [the plaintiff] has not sustained his burden of proving that [the parent] has minimum contacts with South Carolina." Id.

Here, Fitzhenry does not engage in this veil-piercing analysis in his response. Instead, he recites certain shared corporate characteristics between ECA and Virginia College. However, he does not show that Virginia College "was an agent of" ECA, that ECA "exerts a degree of control greater than what is normally associated with common ownership and directorship," or that Virginia College "is a separate entity in name alone." Id. At most Fitzhenry has shown that ECA and Virginia College share some administrative and marketing functions. These are insufficient to confer personal jurisdiction. See ScanSource, Inc. v. Mitel Networks Corp., No. 6:11-cv-00382, 2011 WL 2550719, at *5 (D.S.C. June 24, 2011) (holding that "[t]he mere fact that [the defendant], like other sophisticated parent companies, shares administrative functions and some executives with its subsidiaries" is not enough to confer jurisdiction). Therefore, Fitzhenry has not established that ECA had sufficient minimum contacts with South Carolina to satisfy the due process standard for the exercise of personal jurisdiction.

Fitzhenry argues that even if the court finds that he has failed to make a prima facie showing that personal jurisdiction over ECA is proper, the court should nonetheless allow jurisdictional discovery. Pl.'s Resp. 12.

In such circumstances, district courts "have broad discretion in [their] resolution of discovery problems that arise in cases pending before [them]." Mylan Labs., 2 F.3d at 64 (citation omitted). The Fourth Circuit has stated that "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003) (citing McLaughlin v. McPhail, 707 F.2d 800, 806 (4th Cir. 1983)).

In Mylan Labs., the Fourth Circuit held that the "district court did not abuse its discretion in denying further discovery when . . . [the plaintiff] had ample opportunity to take discovery and the pleadings contained no specific facts that could establish the requisite contacts with Maryland." Id. Additionally, another court in this district has denied jurisdictional discovery where the plaintiff "ha[d] not presented any evidence that [the subsidiary] does not observe corporate formalities, or that it controls its subsidiaries," determining that "[a]llowing Plaintiff to conduct discovery would cost both parties time, money, and effort for what would merely delay the inevitable." ScanSource, 2011 WL 2550719, at *6; see also Tuttle Dozer Works, 463 F. Supp. 2d at 548 (allowing jurisdictional discovery where the plaintiff "presented a picture of the defendants' relationships that tends to support exercising personal jurisdiction over all or some of them").

Fitzhenry has failed to allege any elements required for veil piercing, any evidence suggesting that Virginia College has abused the corporate form, or any evidence that ECA itself has contacts with South Carolina. Moreover, there is no indication that ECA was untruthful in its affidavit. Jurisdictional discovery in this case would amount to little more than a "fishing expedition [conducted] in the hopes of discovering some basis of jurisdiction." Base Metal Trading, Ltd. v. OJSC, 283 F.3d 208, 216 n.3 (4th Cir. 2002).

Because there is no reason to believe that additional information acquired in discovery would alter the personal jurisdiction analysis, the court denies Fitzhenry's request for jurisdictional discovery and grants ECA's motion to dismiss.

### III.  CONCLUSION

For the foregoing reasons, the court **GRANTS** ECA's motion to dismiss for lack of personal jurisdiction.

**AND IT IS SO ORDERED**.

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 21, 2015**
**Charleston, South Carolina**